644 A.2d 490

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Joseph Emannuel WILLIAMS.**

**Misc. (Subtitle BV) No. 30, Sept. Term, 1993.**

Court of Appeals of Maryland.

July 15, 1994.

**460**

Melvin Hirshman, Bar Counsel, Annapolis, and James P. Botluk, Asst. Bar Counsel, Easton, for Attorney Grievance Com'n of Md.

Linwood Hedgepeth, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

On August 5, 1993, Joseph Emannuel Williams ("Respondent"), a member of the Maryland Bar since 1985, was charged by the Attorney Grievance Commission, acting through Bar Counsel, with multiple counts of professional misconduct as defined by Rule BV1 k and Rule 1230 of the Maryland Rules of Procedure. The petition alleged that Respondent had violated Rules 1.1, 1.3, 1.4, 1.15, 3.3 and 8.4 of the Maryland Rules of Professional Conduct.[1] The petition also alleged that Respondent violated Maryland Code (1989),

---

1. The Rules alleged to have been violated provide as follows:
 RULE 1.1. COMPETENCE.
 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
 RULE 1.3. DILIGENCE.
 A lawyer shall act with reasonable diligence and promptness in representing a client.
 RULE 1.4. COMMUNICATION.
 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

§ 10–306 of the Business Occupations and Professions Article and Rule BU9 of the Maryland Rules of Procedure.[2] We referred the matter, pursuant to Maryland Rule BV9 b, to Judge Leonard S. Jacobson of the Circuit Court for Baltimore County for a hearing on these charges and for his findings of fact and conclusions of law as to them.

On January 31, 1994, after several days of evidentiary hearings, Judge Jacobson filed a memorandum opinion, setting forth his findings of fact and conclusions of law. His findings of fact were as follows:

---

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

RULE 1.15. SAFEKEEPING PROPERTY.

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Subtitle BU of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

RULE 3.3. CANDOR TOWARD THE TRIBUNAL.

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

RULE 8.4. MISCONDUCT.

It is professional misconduct for a lawyer to:

.　　　.　　　.　　　.　　　.

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

2. Section 10–306 of the Business Occupations and Professions Article provides:

§ 10–306. Misuse of trust money.

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

Maryland Rule BU9 provides:

Rule BU9. Prohibited Transactions.

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

"This action arises out of four separate complaints made to the Commission regarding the conduct of the Respondent. The decision of this Court is based upon consideration of the testimony, exhibits, stipulations and transcripts of the administrative hearing, regarding all four complaints, produced at the hearing before this Court on January 4, 6, 7 & 18, 1994. The underlying facts were not highly contested and are found to be true by clear and convincing evidence.

## COMPLAINT OF WILLIAM H. WILLIAMS JR.

### Docket No. 92–72–3–7

The Complainant Mr. William H. Williams retained the Respondent to represent him in a divorce action in April, 1990. A Complaint for Absolute Divorce was filed in the Circuit Court for Baltimore City on May 18, 1990. (*Williams v. Williams*, No. 90138001/CE113806). On October 17, 1990, Mrs. Williams' attorney filed Interrogatories which were not answered until February 13, 1991, despite several requests for production. Due to the incomplete nature of the Answers filed by respondent, Mrs. Williams filed a Motion to Compel Discovery and Request for Sanctions on April 30, 1991 which was later granted on June 20, 1991.

On April 3, 1991, Mrs. Williams filed additional discovery in the form of a Request for Production of Documents. The requested documents were not furnished and a second Motion to Compel was filed and granted on July 12, 1991. Because of the delay in discovery, Mrs. Williams requested a postponement to adequately prepare for trial. The case was reset for April 17, 1991. A second postponement was later obtained by the Respondent because [of] the death of a fraternity brother, however, the Respondent never told Mr. Williams. Mr. Williams learned of the postponement when he appeared for trial.

The case was rescheduled for August 14, 1991 at 2:00 p.m. It was later learned that the Respondent was also scheduled to appear before the Circuit Court for Montgomery County

for a calendar call on behalf of Anthony J. Corbin, Sr.[3] (*Corbin v. Thompson,* No.: 61135). Although the Respondent knew of the scheduling conflict, he did not request a postponement until August 13, 1991.

During the August 13th postponement hearing before Judge Kathleen O. Friedman, Respondent knowingly misrepresented to the court that he was scheduled to begin trial in *Corbin v. Thompson,* when the case was only set for a calendar call. Counsel for Mrs. Williams informed the court of the correct nature of the Montgomery County hearing. Upon the information provided by Mrs. Williams' attorney, Judge Friedman denied Respondent's request.

On August 14, 1991, Respondent failed to appear either in Mr. Williams' case or Mr. Corbin's case. As a result of the Respondent's failure to appear, Mr. Williams was forced to proceed *pro se* before Judge Mabel House Hubbard.

On October 11, 1991, a hearing was conducted by Judge Hubbard for Respondent to show cause why he should not be held in contempt of court for his unexcused absence. During the show cause hearing, Respondent stated that he was ill at home with his child; that he could not contact the court because his phone was disconnected; and that he could not get to a pay phone since he did not want to take his child out in the heat. After finding Respondent in contempt, Judge Hubbard held that he could purge the contempt by returning half of the fee paid by Mr. Williams. Respondent provided a check to Mr. Williams for $350.00 which was dishonored upon presentment for insufficient funds. The check was later honored after a second attempt at deposit.

### COMPLAINT OF ANTHONY J. CORBIN, SR.

Docket No. 92–121–3–7

The Complainant Anthony J. Corbin, Sr. retained the Respondent to represent him in two matters regarding his

---

**3.** Mr. Corbin is also a complainant in this attorney grievance action.

son: establishing a visitation schedule and an injunction action. Respondent filed a Petition for Visitation Rights in the Circuit Court for Howard County on June 18, 1990. (*Corbin v. Corbin,* No. 90–CA–13569). On June 27, 1991, a consent order was prepared and forwarded to Mr. Corbin for review. After reviewing the document, Mr. Corbin returned it to the Respondent and requested that several changes be made. Despite several attempts, Mr. Corbin did not hear from the Respondent and the case was later dismissed by the Court on March 6, 1992 for lack of prosecution, pursuant to Maryland Rule 2–507(c).

With regard to the injunction action, a Complaint was filed in the Circuit Court for Montgomery County to keep Mr. Corbin's father from seeing the minor child. (*Corbin v. Thompson,* No. 61135). On August 24, 1990 the court scheduled the case for a calendar call on August 14, 1991 at 1:30 p.m.[4] Despite several attempts, Mr. Corbin did not hear from Respondent until August 10, 1991 when he left a message stating that Mr. Corbin need not appear for the hearing.

The Respondent failed to appear for the calendar call on August 14, 1991 and the case was dismissed by the Court. A Motion to Strike the Dismissal was filed by the Respondent which was denied by the court after noting that a hearing notice had been mailed to Respondent on August 24, 1990.

## COMPLAINT OF MICHELLE C. DIAL

### Docket No. 92–151–3–7

The Complainant Ms. Michelle C. Dial was named personal representative in the Last Will and Testament of Mr. Bernett Dyson. Mr. Dyson's Will was drafted by the Respondent. In the Will, the Respondent was named substitute personal representative in case Ms. Dial was unable

---

**4.** Respondent was scheduled to appear for trial in *Williams v. Williams* in Circuit Court for Baltimore City.

or declined to serve as personal representative. Ms. Dial was also the sole legatee.

After the death of Mr. Dyson, Ms. Dial declined to serve as personal representative and Respondent opened a small estate and was appointed personal representative on October 3, 1990. In addition to Mr. Dyson's estate, Ms. Dial also gained joint possession of the Dyson residence with her son.

In September, 1990, insurance paid $3,408.00 for Mr. Dyson's funeral leaving an unpaid balance of $50.00. Ms. Dial personally paid the balance and was never reimbursed from the estate as required under Maryland law.

Ms. Dial received $10,061.71 from Mr. Dyson's other life insurance policies and subsequently endorsed the reward check to the Respondent. Respondent deposited $10,061.71 into his client funds account on November 6, 1990, but returned $5,095.20 to Ms. Dial on November 30, 1990. The remaining $4,966.40 was retained by the Respondent in his client funds account for the purpose of paying inheritance taxes from the transfer of the Dyson residence. A written assignment agreement was entered into between the Respondent and Ms. Dial that authorized Respondent to advance estate expenses but not pay any of Mr. Dyson's outstanding debts.

Respondent did not retain the $4,966.40 in his client funds account and did not use the funds to [pay] expenses arising out of the estate of Mr. Dyson. Respondent withdrew large sums of money from his client funds account by checks made payable to himself and cash. These misappropriations of funds cause[d] the balance in his Client Funds Account to dip way below the $4,966.40 held on behalf of Ms. Dial.

In addition to the life insurance policies, Mr. Dyson had a savings account with a balance of $625.02 [5] and a checking account with a balance of $352.20. Respondent failed to

---

**5.** Respondent reported to the Register of Wills that the balance of the savings account was $1,263.57.

close the checking account allowing the $6.00 per month service charge to diminish the balance.

Respondent published the Notice of Appointment, Notice to Creditors and Notice to Unknown Heirs on June 21, 1991. Respondent, however, failed to open an estate account, transfer title of Mr. Dyson's automobile, and pay the expenses, taxes or debts of the estate. On September 23, 1991, the Register of Wills sent Respondent a Delinquent Notice because the time for him to file a Certificate of Compliance expired. Respondent filed the Certificate on February 27, 1992 and filed duplicate letters of administration. Respondent did not file supplemental Certificates of Compliance. On February 27, 1992, the Respondent was directed to, but failed to, close Mr. Dyson's estate by the Register of Wills.

On or about November 21, 1991, Ms. Dial filed a complaint with the Commission claiming that the Respondent misused her funds and did not properly manage the estates of Mr. and Ms. Dyson. Even after receipt of Ms. Dial's complaint, the Respondent failed to return or account for Ms. Dial's funds. In addition, Respondent continued to manage the estate and pay various expenses after Ms. Dial's demand for return. To this day, Respondent has failed to produce statements of how the estate money was disbursed.

## COMPLAINT OF ALVIN McARTHUR

### Docket No. 92–286–3–7

The Complainant Alvin McArthur retained the Respondent to take over the representation of McArthur & McArthur, Inc. and himself in an action to foreclose the rights of redemption on several properties purchased at a Baltimore City Tax Sale in 1987. Respondent was referred to Mr. McArthur by original counsel, Emerson L. Dorsey, Jr., due to a conflict of interest problem.

On October 10, 1989, the Respondent received Mr. Dorsey's file in *McArthur & McArthur, Inc. v. Staples,* No. 89129059/CE97135. Contained within the file was a list of

tasks that needed to be completed. Specifically, the list stated that Respondent needed to file an Amended Complaint and an Order of Publication, request that summonses be issued, and enter his appearance in the case. Respondent did not complete any of the tasks listed.

On May 15, 1990, Mr. Dorsey received a Notice of Contemplated Dismissal for Lack of Prosecution since the Respondent had not yet entered his appearance. Mr. Dorsey contacted Respondent who subsequently entered his appearance and filed a Motion to Defer Dismissal and an Amended Complaint. The court granted Respondent's motion and deferred dismissal until April 15, 1991.

Due to the lack of any further action in the case, the court dismissed the case on April 25, 1991. As a result of the Dismissal, two properties were not redeemed and Mr. McArthur was forced to forfeit the purchase price of the tax certificates on the properties. In addition, Mr. McArthur was unable to contact the Respondent throughout Respondent's representation."

Respondent filed many exceptions to Judge Jacobson's factual findings, which we address *seriatim:*

### A. Complaint of William H. Williams, Jr.

▮▮ Respondent excepts to Judge Jacobson's finding that Respondent provided incomplete and untimely responses to discovery, blaming instead his client for failing to provide the information to him. The evidence does not support this contention. The Complainant testified that he provided all information Respondent requested in order to respond to the discovery requests. As Respondent points to no evidence to the contrary, Judge Jacobson's finding is obviously supported by clear and convincing evidence. Nevertheless, even a delay by Complainant in providing the necessary information would not explain the four month delay in answering the bulk of the interrogatories for which Respondent presumably did have the necessary information, nor does it explain Respondent's failure

to respond to opposing counsel's letters and telephone calls concerning the delay.

Respondent also excepts to the implication in the findings of fact that because of Respondent's delay in providing discovery, a postponement of the trial was ordered. Although a postponement was later granted, the first request by Mrs. Williams' counsel, Ms. Rebecca Bryant, was denied. We therefore sustain Respondent's exception on this point. Respondent also asserts in this exception that the reason that he did not inform Complainant of the later postponement was because Complainant had moved during this period. Complainant testified, however, that he notified Respondent of his new address one week after he moved. He also spoke with Respondent approximately three times during the month preceding the scheduled trial date. Respondent's exception on this point is therefore overruled.

Respondent next excepts to Judge Jacobson's finding that although Respondent knew of his August 14, 1991 scheduling conflict, he did not request a postponement until August 13, 1991. Respondent asserts that on a number of occasions he tried to contact Ms. Bryant to have her appear with him at a postponement hearing, but that she was uncooperative. The evidence presented does not support this contention. Furthermore, in looking at the whole record in this case, this contention is inconsistent with Respondent's general dilatory and negligent *modus operandi*. Judge Jacobson's finding was supported by clear and convincing evidence. In any event, the bottom line is that Ms. Bryant did appear at the August 13th postponement hearing, unlike Respondent who did not appear at an earlier postponement hearing where Ms. Bryant requested a postponement.

Respondent next excepts to Judge Jacobson's finding that at the August 13th postponement hearing Respondent knowingly misrepresented to the court that he was scheduled to begin trial in *Corbin v. Thompson*, when the case was only set for a calendar call. The record is not clear as to whether Respondent told the trial judge that he was scheduled for a "trial" or

a "hearing" in Montgomery County. It is clear, however, that Respondent was not completely candid when he failed to describe a calendar call as the true nature of his engagement in Montgomery County. It is common knowledge to any trial lawyer that a calendar call is of far less magnitude than either a trial or a hearing, and postponing or continuing a calendar call is generally less burdensome and inconvenient to all parties involved. We therefore sustain this exception in part, and overrule it in part. Respondent also questions Ms. Bryant's motives in verifying Respondent's claim that he had an appearance in Montgomery County. The reasons motivating Ms. Bryant to verify Respondent's claim of a schedule conflict are irrelevant to any material issue in this case.

### B. Complaint of Anthony J. Corbin, Sr.

Respondent excepts to Judge Jacobson's finding that the Complainant returned the proposed consent order but Respondent did not make the changes Complainant requested and did not communicate with Complainant despite Complainant's several attempts to contact him. We uphold this exception in part, and overrule it in part. The evidence indicates that Corbin spoke to Respondent's secretary on the phone and requested that corrections be made to the proposed consent order before he would sign it. Respondent, however, failed to make the desired corrections or take any further action. Corbin then discharged Respondent from any further representation in September, 1991, months after the consent order was first drafted and should have been resolved. Respondent also was negligent in failing to move to strike his appearance and in failing to forward the notice of contemplated dismissal that was mailed to him in 1992.

Respondent next excepts to Judge Jacobson's finding with respect to the calendar call, specifically that "[d]espite several attempts, Mr. Corbin did not hear from Respondent until August 10, 1991 when he left a message stating that Mr. Corbin need not appear for the hearing." This finding is supported by the transcript of the Inquiry Panel testimony of

Mr. Corbin, which was admitted at the hearing before Judge Jacobson by stipulation. This exception is overruled.

*C. Complaint of Michele C. Dial*

 Respondent excepts to Judge Jacobson's finding that Respondent did not retain the $4,996.40 in his client funds account, but instead withdrew large sums from the account by checks made payable to himself and cash, thereby causing the balance in this account to dip below the $4,966.40 held on behalf of Ms. Dial. Respondent asserts that the escrow account did not fall below $4,996.40 until a year after the funds were deposited; the balance fluctuated thereafter; and this account was an escrow account and not an estate account. Even if what Respondent says is true, Judge Jacobson's factual findings are still completely accurate. It matters not when the funds were withdrawn or that they were withdrawn from an escrow account as opposed to as estate account. What is relevant is that Ms. Dial gave the funds to Respondent for the purpose of paying estate expenses, and Respondent withdrew those funds for purposes other than that for which they were entrusted to him. This exception is overruled.

 Respondent's next exception relates to Judge Jacobson's failure to acknowledge Respondent's inexperience in handling estates and Ms. Dial's alleged lack of cooperation. Even accepting his contentions as true, Respondent's inexperience in estate matters is no excuse for his incompetent handling of Mr. Dyson's small estate. Also, Ms. Dial's alleged lack of cooperation does not excuse Respondent's inaction and incompetence. Respondent did not need Ms. Dial's cooperation to do most of the matters he was required to do as personal representative. Respondent's claims of inexperience and lack of cooperation are disingenuous. This exception is overruled.

Respondent next excepts to Judge Jacobson's finding that he inaccurately reported the balance in Mr. Dyson's savings account. Respondent wrongly states that he is accused of

stealing money from Dyson's bank accounts. To the contrary, Respondent was never accused of stealing money from Mr. Dyson's bank accounts. He was accused of incompetence and lack of diligence in not closing these accounts, failing to open an estate account, and failing to use these funds to pay estate expenses and debts. Respondent reported an inaccurate figure as the balance in the decedent's savings account and failed to file an amended petition correcting that error. This exception is overruled.

Respondent's next exception is to Judge Jacobson's statement that "Ms. Dial filed a complaint with the Commission claiming that the Respondent misused her funds and did not properly manage the *estates* of Mr. and Ms. Dyson." This exception is sustained in part because there was only one estate: that of Mr. Dyson. Ms. Dial's complaint actually is that Respondent mishandled Mr. Dyson's estate and converted her own funds, which she entrusted to him as her lawyer. This exception is overruled in part because Respondent did convert funds that she entrusted to him as her lawyer.

### D. Complaint of Alvin McArthur

In this exception Respondent attempts to shift the blame to Mr. McArthur, alleging that he was unable to contact McArthur and therefore could take no action on the case without first consulting his client. This exception is overruled, as there was ample evidence to support the contrary finding. Respondent's claim that he was unable to contact Mr. McArthur is contradicted by the McArthurs' detailed testimony about their numerous unsuccessful attempts to communicate with Respondent. Mr. Dorsey and the McArthurs had communicated with Respondent and were expecting him to proceed with the case. Judge Jacobson's findings are supported by clear and convincing evidence. *Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 356, 624 A.2d 503, 509 (1993) (When factual findings are in dispute, we will give deference to a hearing judge's findings "unless they are clearly erroneous, giving due regard to the trial court's opportunity to assess the credibility of the witnesses").

Respondent also excepts to Judge Jacobson's finding that the McArthurs tried but were unsuccessful in contacting him. Since there was clear and convincing evidence to support that finding, the exception is overruled.

■ Respondent's next exception is that throughout the representation, McArthur never paid Respondent and acted as if Dorsey were his lawyer. Once an attorney-client relationship is established, however, a lawyer owes duties to the client regardless of whether the client pays him. If Respondent felt that he was not getting the cooperation necessary to fulfill his duties, he should have moved to strike his appearance. Instead, Respondent stayed in the case and did nothing, thereby prejudicing his client.

■ Respondent's final exception goes to all four complaints and relates to his substance abuse problem. Respondent produced evidence regarding his use of an addiction to cocaine during the period of his representation of the Complainants in an effort to mitigate his conduct. Respondent claims that his substance abuse caused his professional misconduct, and that Judge Jacobson erred in finding to the contrary. After reviewing all of the evidence, Judge Jacobson was not persuaded by a preponderance of the evidence that Respondent's cocaine addiction was the substantial cause of his misconduct. Specifically, Judge Jacobson found:

"Respondent consumed the drug in various amounts ranging from daily use to several times a week. It is clear that Respondent is addicted to cocaine and that it did affect his performance as an attorney. However, the causal relationship between Respondent's misconduct and his drug use is unclear and does not persuade this Court by a preponderance of the evidence that drug abuse was a substantial or precipitating cause of the professional misconduct. The Respondent suffers from an underlying mental state that can be termed "dysfunctional." This diagnosis is supported in part by the fact that he continued to use cocaine well past the filing of the complaints against him. To that extent, this Court is not convinced that the misconduct was solely

caused by the Respondent's use of the controlled substance."

■■ At the hearing, Judge Jacobson heard conflicting expert testimony from two psychiatrists who had previously examined Respondent. Maxie T. Collier, M.D. testified that Respondent's substance abuse was the cause of his misconduct, but Christiane Tellefsen, M.D. testified that it was not the cause. A trial judge is free to judge the weight to be given an expert's opinion and to reject or disbelieve an expert's opinion. *Attorney Griev. Comm'n v. Nothstein,* 300 Md. 667, 684, 480 A.2d 807, 816 (1984). The trial court's finding should not be disturbed unless it is clearly erroneous. *Attorney Griev. Comm'n v. Collins,* 295 Md. 532, 548, 457 A.2d 1134, 1142 (1983). There was testimony from both psychiatrists that Respondent's cocaine abuse impaired his ability to practice law. This, however, is not the same as saying that cocaine abuse caused him to lie, steal or neglect his clients. Dr. Tellefsen testified that drug use alone does not prevent someone from understanding the difference between truth and falsity. She further testified that Respondent's condition would not impair his understanding that he was withdrawing money from an escrow account, nor his understanding that the money he was withdrawing was not his. Because there was ample evidence to support Judge Jacobson's factual finding that Respondent's drug abuse did not cause his misconduct, we find that the Judge was not clearly erroneous and therefore overrule this exception.

Having made factual findings and having rejected Respondent's claim of mitigating circumstances, Judge Jacobson concluded that Respondent violated Maryland Rules of Professional Conduct 1.1, 1.3, 1.4(a) and (b), 1.15(a), 3.3(a)(1), and 8.4(b) and (c). He also concluded that Respondent violated Md.Code (1989), § 10–306 of the Business Occupations and Professions Article, and Rule BU9 of the Maryland Rules of Procedure. We agree with Judge Jacobson's conclusions.

■ Having determined that numerous violations have occurred, we turn now to the appropriate sanction to be im-

posed. Although mindful that Respondent has been adjudged guilty of incompetence, neglect, misrepresentation, failure to communicate with his client and commingling of funds, we emphasize the sanction that will be imposed for the misappropriation of client funds, as this is the most egregious of his violations. We have said many times that misappropriation of funds by an attorney "is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Griev. Comm'n v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Griev. Comm'n v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988). While substance abuse can in certain cases justify a sanction less than disbarment, Respondent's addiction to cocaine in this case does not represent a compelling, extenuating circumstance justifying a more lenient sanction. We have said that a sanction less severe than disbarment is not warranted absent evidence that the addiction, to a substantial extent, was the responsible, precipitating and root cause of the misappropriation. *White, supra,* 328 Md. at 418–20, 614 A.2d at 959. Because we sustain Judge Jacobson's finding that Respondent has not proven by a preponderance of the evidence that his drug addiction was the cause of his misconduct, we find a lack of compelling, extenuating circumstances. Accordingly, we shall order that Joseph Emmanuel Williams be disbarred and that his name be stricken from the rolls of those authorized to practice law in this State.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOSEPH EMMANUEL WILLIAMS.*

ELDRIDGE, CHASANOW and BELL, JJ., would impose an indefinite suspension rather than disbarment as the appropriate sanction.