839 A.2d 718

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Alan Franklyn POST.

Misc. AG No. 27, Sept. Term, 2002.

Court of Appeals of Maryland.

Dec. 23, 2003.

Melvin Hirshman, Bar Counsel, James P. Botluk, Asst. Bar Counsel for Atty. Grievance Com'n, for petitioner.

Ronald B. Rubin, Rockville, for respondent.

Argued before BELL, C.J., and ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting at the direction of the Review Board, *see* Maryland Rule 16–709,[1] filed a Petition For Disciplinary Action against Alan Franklyn Post, the respondent, in

---

* Eldridge, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Until July 1, 2001, Maryland Rule 16–709, as relevant, provided:

"a. Who may file. Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."

Adopted November 30, 2000, effective July 1, 2001, Maryland Rule 16–741 now governs the filing of statements of charges after that date. It provides:

"(a) Filing of Statement of Charges.

"(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:

"(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;

which it was charged that the respondent violated Rules 1.15, and 8.4, Misconduct [2] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. Bar Counsel also alleged that the respondent violated Maryland Rule 16–609 [3] and Maryland Code (1989, 1995 Replacement Volume) § 10–306 [4] of the Business and Occupation Article. The alleged violations arose out of settlements of two personal injury cases, in which monies were retained by the respondent to pay medical bills owed by his clients to the complainant, Herbert Joseph, M.D. Rather than remit the monies to the doctor, to whom they were due, it was alleged that the respondent used them for his own purposes, paying the doctor only after the complaint in his case was filed with the petitioner.

---

"(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;

"(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and

"(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

2. Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice."

3. Maryland Rule 16–609, Prohibited Transactions, provides:

"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

4. Maryland Code (1989, 1995 Replacement Volume) § 10–306 of the Business and Occupation Article provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

We referred the case to the Honorable Ann S. Harrington, of the Circuit Court for Montgomery County, for hearing. *See* 16–711.a.[5] Following a hearing, she set forth the facts, which are not in dispute, the parties having stipulated to them, as follows:

"1. Herbert H. Joseph. M.D. rendered medical treatment to three of Respondent's clients: Ali A. Soleimanpour, Mehdi Zekri and Mohammed Zekri. Each of these clients signed assignments, authorizing Dr. Joseph to be paid from the proceeds of any recovery in their cases.

"2. In October 1996, Respondent settled the personal injury cases of Mehdi and Mohammed Zekri. The settlement proceeds were paid into Respondent's client trust account, after which disbursement was made to Respondent's clients. Dr. Joseph, who had examined the Zekris, was owed, but not paid, the sum of $2,847.00, which amount was retained in trust by Respondent from the settlement proceeds.

"3. On November 5,1996, after the settlement of an unrelated case, Respondent drew two checks on his escrow account, payable to his firm, in the total amount of $13,912.78. On November 8, 1996, the balance in Respondent's client trust account was $1,663.02. The balance in the trust account as of December 31, 1996 was $463.26.

"4. In June 1999, Respondent partially settled the personal injury case of Mr. Soleimanpour, and placed the settlement proceeds in Respondent's client trust account. Mr. Soleimanpour, Respondent's client, was paid all monies owed to him as a result of the settlement. Dr. Joseph charged $2,939.00 for his services, which amount was retained by Respondent in trust. His fee was not paid by Respondent and, according to Respondent, was subject to negotiation.

---

**5.** Maryland Rule 16–711.a provides:

"a. Findings. A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

*See* Rule 16–757, effective July 1, 2001.

However, there had not been prior discussions between Respondent and Dr. Joseph.

"5. On December 20, 2000, Respondent fully paid Dr. Joseph for the services Dr. Joseph rendered to the Zekris and to Mr. Soleimanpour. Payment occurred after Dr. Joseph submitted a complaint to the Attorney Grievance Commission of Maryland. Respondent paid Dr. Joseph from funds received as a fee in an unrelated matter.

"6. Respondent is and has been seriously ill for some time, including all times relevant to the pending Complaint. Initially, in 1996, Respondent's physicians thought his condition was simply a case of irritable bowel syndrome and reflux esophagitis.

"7. When Respondent's condition did not improve, Respondent underwent an endoscopic biopsy and a diagnostic colonoscopy in May 1998, after Respondent was admitted to the emergency room of Shady Grove Adventist Hospital with a case of severe gastrointestinal bleeding. This examination was inconclusive.

"8. As it happened. Respondent was suffering from a rare form of cancer that his physicians were initially unable to detect.

"9. On January 18, 2000, Respondent underwent an extreme surgical procedure in an attempt to save his life. On that date, at Suburban Hospital, Dr. Bemy J. Kreutz began what he thought would be exploratory surgery to find and resect a nonmalignant gastric tumor—the suspected cause of the rectal bleeding.

"10. After opening, however, Dr. Kreutz discovered a massive tumor far larger than what he had expected to find—12 centimeters in length. Due to this unique and unexpected finding, another surgeon. Dr. Ernest Hanowell, was consulted and 'scrubbed into the case.' Drs. Kreutz and Hanowell then discovered a large area of cancerous matter, which the hospital pathologist immediately read as a spindle cell tumor. The entire cancerous mass was then resected.

"11. Pathologists at the National Institutes of Health later confirmed the initial surgical diagnosis: spindle cell malignant neoplasm. A year later, Respondent underwent follow-up surgery to ensure the entire tumor was resected and that it had not spread.

"12. Simply stated, Respondent has a rare form of cancer formally known as gastrointestinal stromal tumor. Even after complete resection, such as Respondent endured, the five-year survival rate is only 54%.

"13. In December 2001, Respondent underwent unrelated surgery to correct chronic back problems due to a fragmented lumbar disc. This condition prevented Respondent from walking for several months preceding the surgery due to total loss of use of his right leg.

"14. In June 2002, Respondent was diagnosed with coronary artery disease resulting in an angioplasty and stint replacement in July 2002.

"15. At all relevant times. Respondent has cooperated with Bar Counsel during the course of its investigation, including submitting to a personal interview and producing documents."

After reviewing the applicable law and the parties' arguments, including the respondent's position with regard to the appropriate sanction, the hearing court made Findings and Conclusions, as follows:

"Respondent acknowledges and this Court finds by clear and convincing evidence that Respondent violated Rule 8.4(d) of the Maryland Rules of Professional Conduct, conduct prejudicial to the administration of justice. The evidence is also sufficient to find that Respondent violated Rule 16–609 and § 10–306 of the Business Occupations and Professions Article, which pertain to his unauthorized personal use of client funds held in trust.

"Respondent contends, however, that his actions did not violate Rule 1.15 and 8.4(b) and (c) of the Maryland Rules of Professional Conduct and urges this Court to conclude that he acted negligently and without an intent to misappropri-

ate the funds in question. The Court is sympathetic to the Respondent for the serious and protracted illnesses he endured and the lengthy course of treatment he underwent, but the clear and convincing evidence in this case establishes that he violated all sections of Rule 1.15 as well as Rule 8.4(b) and (c).

"Respondent's escrow account records show that in October 1996, Respondent retained $2,847.00 for the purpose of paying Dr. Joseph on behalf of Mehdi Zekri. By November 8, 1996, the balance was to $1,663.02. Respondent's escrow account went out of trust by Respondent drawing two checks on the account and paying a portion of those funds to his own firm. Respondent failed to hold and keep the funds in his escrow account, he failed to notify Dr. Joseph of the receipt of those funds and failed to deliver them promptly. To the extent that the amount owed to Dr. Joseph was in dispute, Respondent took no action to negotiate a settlement and failed to keep the funds in trust until the dispute was resolved.

"Respondent acknowledged that he also failed to keep the funds in trust in connection with the Soleimanpour matter in 1999.

"Respondent admitted in his testimony that he knew of his obligation to hold the funds in trust, that he knew he was supposed to be disbursing the funds to Dr. Joseph and, nevertheless, he disbursed the funds to himself. No evidence or explanation supports a conclusion that the funds were taken either negligently or by mistake. Respondent's serious illness is unconnected to his decision to personally use client funds held in escrow. Nor is there any evidence of inept or mismanaged business practices. Respondent's conduct was intentional and dishonest.

"This Court recognizes that the issue of sanctions is to be decided by the Court of Appeals. This Court is also aware that Respondent has been disciplined by the Court of Appeals on one previous occasion in 1992. The evidence is uncontroverted, however, that during the relevant time period Respondent was living under the strains of a debilitating

and life-threatening illness. The record of the proceedings also contains an Affidavit prepared by James W. Salter, III, Esq., a long-time member of the Maryland Bar, who holds the opinion that Respondent is a person of good character whom Mr. Salter has found to be honest and trustworthy during their relationship.

"This Court finds on the record presented that Petitioner has presented evidence to support a finding by clear and convincing evidence that Respondent knowingly and intentionally misappropriated the funds in question. This Court recognizes the mitigating factors presented by Respondent[;] however, Respondent failed to provide sufficient explanation for the direct withdrawal of the escrow funds. Therefore, this Court finds that Respondent is in violation of all of the rules charged in the Petition for Disciplinary Action. Consequently, this Court recommends that Respondent be sanctioned."

The petitioner took no exceptions to the findings and conclusions of the hearing court. It filed, however, Petitioner's Recommendation for Sanction, in which it urged the respondent's disbarment. In support of the recommendation, the petitioner emphasized what we have often said with regard to the sanction for misappropriation of entrusted funds, that it "is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Attorney Grievance Comm'n v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002). In addition to *Spery,* the petitioner also relies on *Attorney Grievance Comm'n v. Sullivan,* 369 Md. 650, 655–56, 801 A.2d 1077, 1080 (2002) and *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 410, 773 A.2d 463, 483 (2001).

The respondent excepts to the hearing court's finding of the Rule 8.4(b) and (c) violations. Pointing out that, to establish a Rule 8.4(b) violation, there must be clear and convincing proof of the respondent's commission of a crime, with the requisite intent, and that the act adversely reflects on his fitness as a lawyer, citing *inter alia Attorney Grievance Comm'n v. Post,* 350 Md. 85, 92, 710 A.2d 935, 938 (1998), and that the proof of

Rule 8.4(c) requires a showing that his conduct was dishonest, deceitful or fraudulent, he argues that fact finding in that regard was clearly erroneous. He submits that the conclusion the hearing court drew from the facts it found "flow[ed] solely from the fact that the escrow balances were out of trust on two occasions (one in 1996 and one in 1999), and nothing more." He relies on *Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 682–83, 802 A.2d 1014, 1025 (2002), in which this Court rejected the argument that a violation of Rule 8.4(c) was compelled by a showing the number of times an attorney's escrow account is out of trust. The respondent also challenges the hearing court's conclusions that his serious illness was not the cause of the Rule 8.4 violations and that there was no evidence of "inept or mismanaged business practices."

The hearing court did not credit or accept the respondent's evidence of the course of dealings between the respondent and the complainant—they worked together on several dozen cases over decades and there were only two occasions on which he was not paid timely—as establishing a lack of intent. The respondent excepts to the failure of the hearing court to find that his misconduct was negligent, rather than intentional. Similarly, the respondent faults the hearing court for not finding, on the evidence he presented, that he "honestly believed Dr. Joseph's fee in the Soleimanpour case was subject to negotiation or that he engaged in poor business practices."

With respect to the sanction, the respondent maintains that disbarment is an inappropriate sanction in light of the purpose of attorney discipline, to protect the public, not to punish the erring attorney, *see Attorney Grievance Comm'n v. Garfield*, 369 Md. 85, 98, 797 A.2d 757, 764 (2002), and when all of the facts and circumstances of his case are considered. Important to the respondent's argument is that "the hearing judge's finding that Respondent acted with the required specific intent and/or the evidence does not support deliberate dishonesty." Alternatively, he submits that, even if the court's findings of intentional conduct are sustained, there are mitigating circumstances in his case, when considered in light of circumstances found mitigating in previous cases, that "militate against"

disbarment. In particular, he relies on the facts that there are no client complaints in this case, unlike in *DiCicco* and *Attorney Grievance Comm'n v. McIntire*, 286 Md. 87, 95, 405 A.2d 273, 278 (1979), in neither of which was disbarment the sanction imposed, that during the relevant time periods, he was suffering from a "most serious and utterly debilitating . . . physical health condition[ ]," *Vanderlinde*, 364 Md. at 413–14, 773 A.2d at 485, a severe, debilitating and life-threatening cancer, which is the type of "compelling extenuating circumstances," *id.*, contemplated by that case, and which the evidence he produced indicated "seriously affected his practice of law and management of his office," that he poorly managed his office, that his dealing with the complainant spanned decades, with only two instances of failure to remit funds due timely, that the respondent "has been exceedingly candid with Bar Counsel during his investigation," and that there is in the record favorable character testimony.

 The goal of attorney discipline in this state is well settled. We reiterated it recently in *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 533, 819 A.2d 372, 375 (2003):

> "The primary purpose in imposing discipline on an attorney for violation of the Rules of Professional Conduct is not to punish the lawyer but rather to protect the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 474, 800 A.2d 782, 789 (2002). Disciplinary proceedings also are aimed at deterring other lawyers from engaging in similar conduct. *Id.* at 474–75, 800 A.2d at 789. The purpose, however, "is not to punish the lawyer or to provide a basis upon which to impose civil liability." *Attorney Grievance Comm'n v. Monfried*, 368 Md. 373, 394, 794 A.2d 92, 104 (2002). When this Court imposes a sanction, it protects the public interest "because it demonstrates to members of the legal profession the type of conduct which will not be tolerated." *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 96, 753 A.2d 17, 38 (2000). Finally, the public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were

committed. *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997)."

*See Attorney Grievance Comm'n v. Sheinbein,* 372 Md. 224, 255, 812 A.2d 981, 999 (2002); *Attorney Grievance Comm'n of Maryland v. Hess,* 352 Md. 438, 453, 722 A.2d 905, 913 (1999); *Attorney Grievance Comm'n of Maryland v. Webster,* 348 Md. 662, 678, 705 A.2d 1135, 1143 (1998); *Attorney Grievance Comm'n of Maryland v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). Determining the appropriate sanction requires the Court to consider the facts and circumstances of each particular case, including consideration of any mitigating factors. *See Attorney Grievance Comm'n of Maryland v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance Comm'n of Maryland v. Gavin,* 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998). Specifically, in that regard, we have recognized as relevant to and, indeed, a part of the facts and circumstances that inform the sanction decision, "the nature and gravity of the violations and the intent with which they were committed." *Awuah,* 346 Md. at 435, 697 A.2d at 454. *See Attorney Grievance Comm'n of Maryland v. Pennington,* 355 Md. 61, 78, 733 A.2d 1029, 1037–38 (1999); *Attorney Grievance Comm'n of Maryland v. Milliken,* 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998); *Attorney Grievance Comm'n v. Montgomery,* 318 Md. 154, 165, 567 A.2d 112, 117 (1989). Likewise relevant are whether the sanction imposed in fact furthers the objective of the sanction, *Attorney Grievance Comm'n v. Harris Smith,* 356 Md. 72, 90–91, 737 A.2d 567, 577 (1999), the attorney's prior grievance history—whether there were prior disciplinary proceedings, the nature of the misconduct involved in those proceedings and the nature of any sanctions imposed, as well as any facts in mitigation, *Attorney Grievance Comm'n v. Franz,* 355 Md. 752, 762–63, 736 A.2d 339, 344 (1999); *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975), the attorney's remorse for the misconduct, *Attorney Griev. Comm'n v. Wyatt,* 323 Md. 36, 38, 591 A.2d 467, 468 (1991), and the likelihood of the conduct being repeated. *Attorney Grievace Comm'n v. Freedman,* 285 Md. 298, 300, 402 A.2d 75,

76 (1979). As to the latter, we have held that conduct that is an aberration nevertheless can be so egregious as to warrant the imposition of a significant sanction. *See Attorney Griev. Comm'n v. Protokowicz,* 329 Md. 252, 263, 619 A.2d 100, 105 (1993).

We have consistently and repeatedly admonished the bar that "misappropriation of funds by an attorney is an act infested with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991). And, especially as relates to our cases in which misconduct of the kind proscribed by Rule 8.4(b), application of that general rule has been largely followed. *See e.g. Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485; *Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 768 A.2d 607(2001); *Attorney Grievance Comm'n v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661 (2001); *Attorney Grievance Comm'n v. Williams,* 335 Md. 458, 474, 644 A.2d 490, 497 (1994); *Attorney Griev. Comm'n v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 345, 587 A.2d 511, 516 (1991); *Attorney Grievance Comm'n v. Kolodner,* 321 Md. 545, 583 A.2d 724 (1991); *Attorney Grievance Comm'n v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988); *Attorney Grievance Comm'n v. Bloom,* 306 Md. 609, 510 A.2d 589 (1986); *Attorney Grievance Comm'n v. Cockrell,* 304 Md. 379, 393–94, 499 A.2d 928, 935 (1985); *Attorney Grievance Comm'n v. Boehm,* 293 Md. 476, 446 A.2d 52 (1982); *Attorney Grievance Comm'n v. Burka,* 292 Md. 221, 438 A.2d 514 (1981); *Attorney Grievance Comm'n v. Micka,* 289 Md. 131, 422 A.2d 383 (1980); *Attorney Grievance Comm'n v. Garson,* 287 Md. 502, 413 A.2d 564 (1980); *Attorney Grievance Comm'n v. McBurney,* 283 Md. 628, 392 A.2d 81 (1978); *Attorney Grievance Comm'n v. Andresen,* 281 Md. 152, 379 A.2d 159 (1977); *Attorney Grievance Comm'n v. Silk,* 279 Md. 345, 369 A.2d 70 (1977); *Bar Ass'n of Baltimore City v. Carruth,* 271 Md. 720,

319 A.2d 532 (1974); *Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 307 A.2d 677 (1973).

The admonition applies as well to conduct involving misrepresentation. *See Vanderlinde,* 364 Md. at 380, 773 A.2d at 465. *See also Attorney Grievance Comm'n v. Levitt,* 286 Md. 231, 238, 406 A.2d 1296, 1299 (1979); *Fellner v. Bar Ass'n of Balt. City,* 213 Md. 243, 247, 131 A.2d 729, 732 (1957). That is especially the case when the attorney has a history of such conduct. *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 449, 635 A.2d 1315–1319 (1994). As we have previously stated, *Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485, is the latest word on when a mental condition is a compelling extenuating factor, when it is "most serious and debilitating," the " 'root cause,' of the misconduct,' " and "results in [the] attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC." Clearly, a physical condition, including illness, or other consideration must meet at least as high a standard.

Whether there has been a misappropriation is a question entrusted to the determination of the hearing court, whose findings in that regard on that point are important. *See Attorney Grievance Comm'n v. Parker,* 306 Md. 36, 46, 506 A.2d 1183, 1188 (1986) ("Given the findings of the trial judge, the case we have before us is not one of misappropriation of funds."). Also important is the intent with which the misconduct was committed; it informs the quality of the misconduct for sanction purposes. *Attorney Grievance Comm'n v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661 (2001) (reasoning that "the state of mind of the attorney at the time of the violation [is] important in the context of mitigation."); *Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 29, 741 A.2d 1143, 1158 (1999) ("We agree with Respondent that his state of mind at the time he violated the ethical rules is important in the context of mitigation."); *Awuah,* 346 Md. at 435, 697 A.2d at 454 (1997) ("Although ignorance does not excuse a violation of disciplinary rules, a finding with respect

to the intent with which a violation was committed is relevant on the issue of the appropriate sanction.").

The findings of fact made by the hearing court are reviewed to determine if they are based on clear and convincing evidence, *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992); *Attorney Grievance Comm'n v. Clements,* 319 Md. 289, 298, 572 A.2d 174, 179 (1990). Indeed, the "hearing court's findings of fact are prima facie correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). *Attorney Grievance Comm'n v. McCoy,* 369 Md. 226, 234–235, 798 A.2d 1132, 1137 (2002). On the other hand, what to make of those facts, the ultimate decision as to whether a lawyer has violated professional rules, rests with this Court. *Garland,* 345 Md. at 392, 692 A.2d at 469; *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995). *Sheinbein,* 372 Md. at 240, 812 A.2d at 990.

The respondent's exceptions proceed on the assumption that the hearing court erroneously found the facts as to the Rule 8.4(b) and (c) violations and erroneously failed to consider evidence which would have mitigated his conduct. Indeed, his exceptions are so interrelated that, unless his exceptions as to the court's findings are sustained, there could be no compelling extenuating circumstances sufficient to avoid the automatic disbarment rule for misappropriation.

In *Awuah,* in overruling an exception taken by Bar Counsel to the hearing court's failure to find a misappropriation, this Court stated:

"It questions a factual finding by the judge who not only heard, but also was able to observe the demeanor of the respondent, whose testimony he credited. Judge Mason articulated the basis for his conclusion that Bar Counsel did not establish by clear and convincing evidence that respondent failed to return the money to the clients. He consid-

ered the character testimony presented by the respondent, the absence of other evidence to indicate that respondent on any other occasion took client monies for his own use, and the overwhelming conceded evidence with respect to respondent's total ineptness concerning the handling of the business aspects of his practice. It is well settled that, in disciplinary proceedings, the factual findings of the hearing judge will not be disturbed unless they are clearly erroneous. *Attorney Grievance Comm'n v. Kemp*, 303 Md. 664, 674, 496 A.2d 672, 677 (1985). *See also*, Maryland Rule 8–131. There simply is no basis for overturning Judge Mason's factual finding that the respondent did not misappropriate any of his clients' money."

346 Md. at 433–34, 697 A.2d at 453. The same can, and should, be said of Judge Harrington's factual findings. As in *Awuah*, there simply is no basis for overturning the hearing court's findings with regard to the Rule 8.4(b) and (c) violations or its refusal to credit the respondent's mitigation evidence.

There being no compelling extenuating circumstances in this case, given the hearing court's findings, the only appropriate sanction is disbarment.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ALAN FRANKLYN POST.