845 A.2d 1204

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**James Grafton GORE, Jr.**

**Misc. Docket AG No. 7, Sept. Term, 2003.**

Court of Appeals of Maryland.

April 5, 2004.

**458**

Melvin Hirshman, Bar. Counsel and Fletcher P. Thompson, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, for Petitioner.

James Grafton Gore, Jr., Marshall, VA, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, Judge.

## I.

James Grafton Gore was admitted to the Maryland Bar on 21 June 1984. He also is admitted to the Bars of Virginia, Pennsylvania, and the District of Columbia. The Attorney Grievance Commission ("the Commission"), acting through Bar Counsel, filed a petition for disciplinary or remedial action on 5 May 2003, based on Gore's repeated failures to file sales tax returns or remit collected sales taxes regarding a restaurant he owned and managed in the District of Columbia.[1] The

---

1. Prior to the lodging of the charges in this Court by the Commission, Gore was charged in the Superior Court of the District of Columbia under D.C.Code Ann. § 47–2028 (1997 Repl.):

 (a) Any person required to file a return or report or perform any act under the provisions of this chapter who shall fail or neglect to file such return or report or perform such act within the time required shall, upon conviction thereof, be fined not more than $1,000, or

Commission alleges that Gore violated Maryland Rules of Professional Conduct ("MRPC") Rules 8.4(b),[2] 8.4(c) [3] and 8.4(d).[4] Judge Michele Jaklitsch of the Circuit Court for Anne Arundel County, to whom we assigned this matter for hearing and factfinding, made the following findings of fact and conclusions of law (some footnotes omitted and others altered as to number):

*Findings of Fact and Conclusions of Law*

"Respondent was *pro se.* Upon consideration of the parties' memoranda, exhibits, witness testimony and arguments of both parties, this Court makes the following written statement of findings of fact and conclusions of law.

---

imprisoned for not more than 6 months, or both, for each and every failure or neglect. The penalty provided herein shall be in addition to the other penalties provided in this chapter.

(b) Any person required to file a return or report or perform any act under the provisions of this chapter who willfully fails or refuses to file such return or report or perform such act within the time required shall, upon conviction thereof, be fined not more than $5,000, or imprisoned for not more than 1 year, or both. The penalty provided herein shall be in addition to the other penalties provided in this chapter.

(c) For purposes of this section, the term "person" also includes any officer of a corporation, and any employee of a corporation responsible for the performance of any act under the provisions of this chapter and any member of a partnership or association responsible for performance of any act under the provisions of this chapter. This statute, enacted by 1996 District of Columbia Laws 11–254 (Act 11–518), Chapter 20, since has been repealed by 2000 District of Columbia Laws 13–204 (Act 13–359). Gore pled guilty to non-willful failure to file returns or pay sales taxes, was convicted, and served forty-five days in jail.

**2.** "It is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects ..."

**3.** "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation ..."

**4.** "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice ..."

*Findings of Fact*

"The Respondent, James G. Gore, Jr., was admitted as a member of the Maryland Bar on June 21, 1984. Respondent is also admitted to the Bars of Virginia, Pennsylvania and the District of Columbia. Respondent is on inactive status in Pennsylvania. He does not maintain an office for the practice of law.

"On October 1, 1998, Respondent, who was President of Chinatown Restaurants, Inc. and Coco Loco Management, Inc., became the owner of Coco Loco restaurant in Washington, D.C. Respondent operated the restaurant through these corporations. Coco Loco restaurant was already facing financial problems when the Respondent became the owner of the restaurant. The Respondent had knowledge of Coco Loco's financial problems. As owner, Respondent was at the restaurant on a regular basis.

"Respondent admitted that he was responsible for filing sales taxes, collected by Coco Loco restaurant, with the District of Columbia. Pursuant to D.C.Code Ann. § 47–2015(a) (1997 Repl.), sales tax returns are due on the twentieth day of each month. The reporting period for each return is the preceding month. The Respondent complied with his obligation to collect taxes on the restaurant's sales pursuant to D.C.Code Ann. § 47–2015(a) (1997 Repl.). However, the Respondent did not separate the sales tax money from the non-sales tax money when depositing money into the corporations' bank accounts.

"During the time the Respondent was an owner of Coco Loco restaurant, he failed to file timely tax returns for the months of October 1998, December 1998, the entire year of 1999 and the months of January, February, and March 2000. The October 1998 sales tax return, while filed late, did include a payment. During this time, Respondent only filed the November 1998 return in a timely fashion with payment. Respondent did not pay any other sales taxes through March 2000, even though the restaurant collected sales taxes during this time period.

"On April 25, 2000, the Respondent met with Edmond Wybaillie, a special agent with the Criminal Investigations Division of the D.C. Office of Tax & Revenue regarding his lack of filing and remittance of sales tax returns. During this meeting, Respondent had no explanation for his failure to file the returns and for his failure to pay the taxes. Respondent admitted during this conversation that he knew the sales tax money belonged to the District of Columbia and that his failure to remit the sales tax to the District of Columbia was wrong. Respondent explained during the interview that all of the money owed to the District of Columbia was used to pay the restaurant's debts and did not go for his personal use.

"On or about April 27, 2000 the Respondent brought fifteen sales tax returns for the months of January 1999 through March 2000 to the D.C. Office of Tax and Revenue. The total due on these returns was $181,915.76. However, no payments were submitted with these returns. Over the next couple of months, Respondent paid $6,000 in payments, but no return had been paid in full.

"On August 11, 2000, the Corporation Counsel for the District of Columbia charged Respondent with one count of tax fraud—failure to pay, and fifteen counts of tax fraud—failure to file sales tax returns. These counts are for violations of D.C.Code Ann. § 47–2028(b) (1998 Repl.).

"Between April 27, 2000 and June 4, 2001, Respondent did not file any more sales tax returns for Coco Loco Restaurant. On or about June 4, 2001, Respondent filed sales tax returns that were due for January 2001, February 2001, March 2001, and April 2001. With those four returns, Respondent submitted four checks in the full amount shown to be due on each of the returns. Those four checks totaled $47,986.19. The bank on which these checks were drawn dishonored all of these checks for insufficient funds.[5] To

---

5. The restaurant's opening balance on this checking account was $86.06 as of June 1, 2001. However, a $1,000 deposit was later made

date, this payment still has not been received by the District of Columbia Government.

"On June 27, 2001, Respondent submitted sales tax returns for the months of May, June, July, August, September, October, November and December 2000. With those returns, Respondent submitted eight checks totaling $103,806.83, which represented the balance due on each return. All of these checks were dishonored for insufficient funds. The balance in the account from which these checks were written, for the entire month of June 2001, was at all times insufficient to pay even one of the checks the Respondent submitted.

"At his deposition, Respondent testified that he believed the checks were good when written or that they would be good when presented to the bank. At the time the checks were submitted, the balance in the account was $87.28. At trial the Respondent testified that the restaurant obtained a loan from which the checks could have been paid, but he produced no evidence of a loan. Additionally, this same account had a history of overdrafts.[6]

"On November 16, 2001, the District of Columbia filed a second set of charges against Respondent. He was charged with twelve counts of willful failure to file sales tax returns for the period of April 1, 2000 through March 31, 2001 in violation of D.C.Code Ann. § 47–2028(b) (1997 Repl.). He was also charged with twelve counts of willful failure to pay sales tax monies due for the same time period in violation of D.C.Code Ann. § 47–2028(b) (1997 Repl.). However, on December 13, 2001, the Respondent pled guilty in D.C. Superior Court to two lesser amended charges of non-willful

---

bringing the total amount from which funds could have been drawn up to $1,086.06.

6. For instance, for the month of March 2001, there were ten charges incurred for insufficient funds. In April 2001, there were twenty-one incurred charges for overdrafts. In the month of May 2001, there were four incurred charges for overdrafts. In June 2001, there were ten incurred charges for overdrafts. In July 2001, there were forty-nine incurred charges for overdrafts. . . .

failure to file tax returns in violation of D.C.Code Ann., § 47–2028(a) (1997 Repl.), one on behalf of himself and one on behalf of the corporation. The rest of the charges were nol prossed.

"Although the Respondent pled guilty to the lesser amended charge of non-willful failure to file tax returns, the Court finds by clear and convincing evidence that Mr. Gore knew he was obligated to file sales tax returns and remit payments and for a period of three years he consciously continued to collect the sales tax but did not file returns or remit payment to the D.C. Government.

"On February 28, 2002, the Superior Court of the District of Columbia sentenced Respondent to six months in jail, on each count, to run concurrently, with all but 45 days suspended. The Respondent was placed on three years of supervised probation and was ordered to pay restitution of $885,848.00 for back taxes, penalties and interests.

### Standard

"At a hearing on a petition filed by the Attorney Grievance Commission ("AGC") under Md. Rule 16–757(b), the AGC has the burden of proving by clear and convincing evidence, the averments of the petition. The Respondent, under Md. Rule 16–757(b), has the burden of proving an affirmative defense or a matter of mitigation or extenuation by a preponderance of the evidence.

### Conclusions of Law

"The Respondent has been charged with violating Maryland Rules of Professional Conduct 8.4(b), 8.4(c), and 8.4(d). This court finds that the Respondent violated Maryland Rules of Professional Conduct 8.4(b), 8.4(c), and 8.4(d). While the incident involving these violations occurred in the District of Columbia, the Respondent is subject to the disciplinary authority of the State of Maryland. *See,* Maryland Rules of Professional Conduct Rule 8.5(a).

*8.4(b)*

"The Respondent admits to violating Rule 8.4(b) of the Maryland Rules of Professional Conduct ("MRPC") in his response to the Attorney Grievance Commission's Petition for Disciplinary or Remedial Measures and also in his testimony before this Court. Mr. Gore pled guilty on December 13, 2001 to two counts of non-willful failure to file sales tax returns [7] in violation of D.C.Code Ann. § 47–2028(a) (1997 Repl.).

"The charges brought against Mr. Gore stemmed from his failure to timely file and pay sales tax returns on behalf of the restaurant Coco Loco for the period of October 1998 through March 2000 (with the exception of November 1998). In April 2000, Mr. Gore acknowledged that his practice of not filing the sales tax returns was wrong, yet he continued not to pay or file sales tax returns for another year. Mr. Gore ultimately pled guilty to two lessor counts of non-willful failure to file sales tax returns in violation of D.C.Code Ann. § 47–2028(a) (1997 Repl.) and was sentenced in D.C. Superior Court to six months on each count, to run concurrent, with all but 45 days suspended and he has to pay $885,848 for back taxes, penalties, and interest. This reflects on the Respondent's honesty, trustworthiness, and fitness to practice law. For all of these reasons, the Court finds by clear and convincing evidence that Mr. Gore violated Rule 8.4(b).

*8.4(c)*

"Mr. Gore denies that he violated MRPC 8.4(c), however, this Court finds that Mr. Gore did violate MRPC 8.4(c). In April 2000, Mr. Gore knew that he was under a criminal investigation for failing to file and pay sales taxes on the restaurant Coco Loco. Yet, Mr. Gore still failed to file any sales tax returns or pay sales taxes for Coco Loco between

---

**7.** Only one of these two counts of non-willful failure to file sales tax returns was personal. The other was a plea on behalf of the Corporation of which Mr. Gore is an officer.

April 27, 2000 and June 4, 2001. When Mr. Gore did file these tax returns and submit four checks totaling $47,986.19 on or about June 4, 2001, the bank dishonored all four of Mr. Gore's checks since the balance from which money could be drawn from the account was only $1,086.06. Then, on June 27, 2001, Mr. Gore again submitted eight separate tax returns and checks for eight months in the year 2000. All eight of these checks were also dishonored for insufficient funds.

"While Mr. Gore pled guilty in his criminal matter to non-willful failure to file sales tax returns, the Court finds by clear and convincing evidence that Mr. Gore did willfully fail to file and remit sales tax returns to the District of Columbia. At all times, Mr. Gore knew that he was obligated to file and pay sales tax returns to the District of Columbia. However, he continued for a span of three years to fail to fulfill these obligations. In this proceeding, this failure is seen as willful.

"The Court finds that Mr. Gore's failure to file the appropriate sales tax returns and remit payments when due, and then to send checks when there were insufficient funds to cover the checks violates MRPC 8.4(c). *See, e.g., Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 416[, 800 A.2d 747] (2002) (attorney's failure to withhold employee's state income taxes and to pay the appropriate amounts owed to the Comptroller from March 1998 through May 31, 2001 as well as his failure to file the appropriate returns when due violated 8.4(b), (c), and (d)); *Attorney Grievance Comm'n v. Atkinson,* 357 Md. 646[, 745 A.2d 1086] (2000) (Attorney knew she had failed to file tax returns and failed to act to remedy the situation, which was, at best, dishonest).

"*Angst* involved a case where the Respondent filed Maryland withholding tax returns late, failed to file tax returns, and failed to pay trust fund income taxes withheld from employees' wages. The Court, in *Angst,* found that the 'Respondent's failure to fulfill his statutory obligations as an employer to withhold employees' state income taxes and to

pay the appropriate amounts owed to the Comptroller from March 1998 through May 31, 2001 as well as his failure to file the appropriate returns when due violated Rules 8.4(b)(c) and (d).' 369 Md. 404, 416[, 800 A.2d 747] (2002).

"In *Atkinson*, the Respondent failed to file joint state and federal income tax returns for the years 1988 to 1996. In 1994, the Respondent went to the I.R.S. and received several pamphlets. However, she still failed to file tax returns with this new found information. With each passing year her tax arrearages grew to the point where she could not afford to pay the back taxes. However, she was aware of her legal obligation to file the tax returns. In 1997, the I.R.S. contacted the Respondent regarding her failure to file and pay tax returns. The Respondent owed approximately $93,000 in back taxes and had made one payment of about $15,546 toward the balance. In *Atkinson*, the Court stated that the "willful failure to file timely income tax returns also violates Rule 8.4(c) ..." 357 Md. 646, 650[, 745 A.2d 1086] (2000). The Court found that Respondent knew that she failed to file tax returns when she went to the I.R.S. office in 1994 and that once she received information on how to resolve the situation, she then again failed to act. *Id.*

"Similarly, in the present case, Mr. Gore was well aware that he owed a fiduciary duty to the District of Columbia to file sales tax returns and remit the monies that were collected from patrons of the restaurant. When approached by agents of the District of Columbia in April 2000, Mr. Gore acknowledged that his practice of not filing the sales tax returns was wrong, yet he continued not to pay taxes or file sales tax returns for another year. When he did finally remit filings and checks, it was drawn on an account which had insufficient funds to cover the arrearage.

"For these reasons, the Court finds that Mr. Gore did willfully fail to file sales tax returns and remit payments, and this is an act that reflects conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(c).

*8.4(d)*

"The Court finds there is clear and convincing evidence that Mr. Gore violated MRPC 8.4(d). Mr. Gore has already admitted to violating MRPC 8.4(b) and pled guilty to charges of non-willful failure to file sales tax returns. The failure of an attorney to remit sales tax returns and payments is similar to the cases involving an attorney's failure to file income tax returns. This conduct, in its very nature, is prejudicial to the administration of justice. *See, e.g. Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 462[, 374 A.2d 354] (1977) (An attorney failed to file income tax returns for a number of years which represented conduct prejudicial to the administration of justice); *Attorney Grievance Comm'n v. Atkinson,* 357 Md. 646[, 745 A.2d 1086] (2000) (The crime of wilfully and knowingly failing to file a federal income tax return represents conduct prejudicial to the administration of justice.)

"Mr. Gore knew that he was not filing sales tax returns for his business. This reflects negatively on the legal profession and he is setting a bad example for the public at large. An attorney must uphold the law and administer justice.

### Mitigation

"The Respondent would like the Court of Appeals to consider several factors when ultimately deciding sanctions. Respondent states that he has had no prior discipline in Maryland. Bar Counsel has neither confirmed nor denied this assertion. Respondent seeks mitigation in his sanction since he has been cooperative with Bar Counsel and has stipulated to the evidence. Furthermore, the Respondent admits that he made a terrible business mistake for which he has already been punished. He also explains that this incident had no connection to the practice of law.

### Conclusion

"Wherefore, it is the 20th day of October 2003, found by the Circuit Court of Anne Arundel County, for the reasons

set forth herein, that the Respondent, James G. Gore, Jr., had violated Maryland Code of Professional Responsibility § 8.4(b), (c), and (d)."

Neither Gore nor the Commission filed any exceptions to the hearing judge's findings of fact or conclusions of law.

## II.

This Court exercises original jurisdiction over attorney discipline proceedings. We conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. We will not disturb the factual findings of the hearing judge if they are based on clear and convincing evidence. Our review of the hearing judge's conclusions of law is *de novo.*

*Attorney Griev. Comm'n v. Davis,* 375 Md. 131, 157–58, 825 A.2d 430, 445–46 (2003) (citations omitted). "A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence." Md. Rule 16–757(b).

## III.

No exceptions were filed in this case. Md. Rule 16–759(b)(2)(A) provides: "If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." Furthermore, after reviewing the record, we conclude that ample evidence existed to support, by a clear and convincing standard, the hearing judge's findings of fact. We also agree with the hearing judge that Gore violated Rules 8.4(b), (c), and (d) of the Maryland Rules of Professional Conduct.

Gore's misconduct essentially may be characterized as a business decision, in his capacity as the owner of a restaurant, that carrying on operation of his struggling business justified his failure to fulfill his obligations under the District of Columbia sales tax laws. Gore operated his restaurant without filing sales tax returns or paying those taxes as they came due for more than thirty months, a period of time we find

remarkable. District of Columbia authorities met with Gore on 25 April 2000 to discuss the potential consequences of his failure to meet his tax obligations, and yet he continued his course of conduct for at least another year. On 28 February 2002, Gore was ordered to pay restitution of $885,848.00. We know of no payments Gore has made toward that obligation, nor has he indicated that he has the intention (much less ability) to repay what is owed.

 The Commission argues that Gore's use of sales tax money in his business was intentional misappropriation. Intentional misappropriation is an "act infected with deceit and dishonesty," that is prohibited by Rule 8.4(c). *Attorney Griev. Comm'n of Maryland v. Spery*, 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002). Gore disputes this characterization of his misconduct. We conclude that Gore committed intentional misappropriation by keeping the collected sales taxes he owed to the District of Columbia and using those funds to support the restaurant in which he had a financial interest.

The discussion during oral argument in this case centered on the question of whether the willful failure to file sales tax returns or to pay sales taxes may be characterized as intentional misappropriation. Gore analogized sales taxes to income taxes. He argued that a person has the right to retain and use any receipts that are not earmarked to be withheld from a paycheck, without incurring a violation of a duty to keep any part of those receipts in trust for the government. As his analogy went, a person may be required to pay income taxes to the government on an annual basis, but there is no legal requirement that the person separate those funds from his or her discretionary receipts prior to filing an income tax return. Gore then applied the example to his own situation, claiming that his restaurant had the right to hold the funds in its general operating account until the taxes became due. He claimed that the funds were properly in the restaurant's control, but they were never paid over to the D.C. taxing authority. According to Gore, this is not the same as taking

funds out of someone else's account and using it for other purposes.

This analogy is specious and inapplicable to the present case. Unlike income taxes, the amount of sales taxes due to the government is apparent from the instant that revenues are collected. A person ordinarily cannot keep the precise value of income taxes in a separate account in trust for the government from the time the income is earned until taxes are due because the exact amount the person will owe ultimately is not knowable until the person prepares his or her tax return retrospectively. In contrast, each restaurant customer's bill separates the amount collected into three categories: the amount due for food and beverages, which belongs to the restaurant; the sales tax, which belongs to the government; and the gratuity, which belongs to the server. The restaurant's manager instantly knows how much goes to the restaurant's accounts, and how much belongs to others.

In this way, sales taxes are similar to Maryland employee withholding taxes, which by law must be kept in a separate account in trust for the government. In *Attorney Griev. Comm'n v. Clark*, 363 Md. 169, 767 A.2d 865 (2001), we held that failure to keep employee withholding taxes in a separate account or to promptly remit those funds when due amounted to misappropriation of third party funds. 363 Md. at 181–82, 767 A.2d at 872. Likewise, Gore's willful failure to file sales tax returns or to pay the sales taxes the restaurant owed, compounded by his use of those funds for personal business use, amounted to intentional misappropriation of funds due to the D.C. government, in violation of Rule 8.4(c).[8]

■ The dishonored checks Gore issued to District of Columbia taxation authorities gave rise to a separate Rule 8.4(c) violation. Gore represented to those authorities that the checks could be drawn on sufficient funds to cover their face

---

8. We do not suggest that sales taxes must be held in a separate account in trust for the government absent a statutory or regulatory obligation to do so.

value. In fact, Gore either knew or should have known that the bank account against which those checks were drawn did not have sufficient funds. His representations to the contrary, both explicit and implicit in the action of issuing the checks, were conduct involving dishonesty, fraud, deceit, or misrepresentation.

■ The hearing judge found that Gore's failure to file sales tax returns or pay the taxes due was willful. It is well settled that willful failure to pay taxes constitutes conduct prejudicial to the administration of justice in violation of Rule 8.4(d). *See Attorney Griev. Comm'n v. Thompson*, 376 Md. 500, 515, 830 A.2d 474, 483 (2003); *Attorney Griev. Comm'n v. Angst*, 369 Md. 404, 419–20, 800 A.2d 747, 756–57 (2002); *Clark*, 363 Md. at 182–83, 767 A.2d at 873; *Attorney Griev. Comm'n v. Atkinson*, 357 Md. 646, 656, 745 A.2d 1086, 1091 (2000); *Attorney Griev. Comm'n v. Post*, 350 Md. 85, 99, 710 A.2d 935, 942 (1998).

■ Gore was convicted in the District of Columbia of failure to file sales tax returns or pay taxes when due, and was incarcerated for forty-five days. Gore's criminal actions were coupled with intentional misappropriation, as well as his dishonest behavior in issuing bad checks. Moreover, despite being given several opportunities by the District of Columbia taxation authorities to change his course of conduct, Gore persisted in operating his business without filing sales tax returns or paying the taxes when due. These criminal actions reflect adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects, including his judgment, in violation of Rule 8.4(b).

## IV.

■ The purpose of discipline under the Maryland Rules of Professional Conduct is not to punish the lawyer, but to protect the public and the public's confidence in the legal profession. *Attorney Griev. Comm'n v. Post*, 379 Md. 60, 70, 839 A.2d 718, 724 (2003). We protect the public through sanctions against offending attorneys in two ways: through

deterrence of "the type of conduct which will not be tolerated," *id.*, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. *See Attorney Griev. Comm'n v. Protokowicz*, 326 Md. 714, 729, 607 A.2d 33, 40–41 (1992). The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Post,* 379 Md. at 70–71, 839 A.2d at 724.

 Intentional misappropriation, "by an attorney, of funds entrusted to his or her care is an act infected with deceit and dishonesty and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Spery,* 371 Md. at 568, 810 A.2d at 491–92. "We see no significant moral distinction between willfully defrauding and cheating for personal gain a client, an individual, or the government. Cheating one's client and defrauding the government are reprehensible in equal degree." *Attorney Griev. Comm'n v. Casalino,* 335 Md. 446, 452, 644 A.2d 43, 45–46 (1994) (formatting omitted) (quoting *Maryland State. Bar Ass'n v. Agnew,* 271 Md. 543, 550, 318 A.2d 811, 815 (1974)).

 Gore's rationale for his decision to avoid filing returns or paying sales taxes was that he needed to keep the business afloat.

[I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

*Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001). Needless to say, the need to keep a restaurant in business neither justifies nor mitigates Gore's misconduct in this case.

 Gore's intentional misappropriation provides one rationale for this Court to impose the ultimate sanction of disbarment; another is the fact that Gore's willful failure to file returns or pay taxes amounted to a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects. Although Gore was convicted of non-willful failure to file returns and pay sales taxes, the hearing judge found clear and convincing evidence that his actions were willful. That conclusion was correct.

 "One of the most relevant considerations in determining a sanction for failure to file income tax returns is the intention and motive of the respondent. Because our failure to file cases have dealt with attorneys with deceitful motives and attorneys without such motives, over the years this Court has rendered diverse sanctions." *Attorney Griev. Comm'n v. Tayback,* 378 Md. 578, 594–95, 837 A.2d 158, 168 (2003) (citation and formatting omitted). Gore's decision to give the D.C. taxation authorities checks that he either knew or should have known would be dishonored by the bank makes this more than a simple failure-to-file case. This Court generally disbars attorneys who commit willful tax evasion.[9] While the record does not indicate that Gore filed any fraudulent returns, his decision to issue bad checks reflects the same type of deceptive intent found in cases involving willful tax evasion. Because of Gore's deceptive actions and because of the large scale of Gore's failure to fulfill his tax obligations, both in terms of the large amounts of money involved and the long period of time during which Gore continued his misconduct,

---

9. "We have held repeatedly that willful tax evasion is a crime infested with fraud, deceit and dishonesty, and will result in automatic disbarment absent clear and convincing evidence of a compelling reason to the contrary." *Casalino,* 335 Md. at 452–53, 644 A.2d at 46.

this case would warrant disbarment even had Gore not committed intentional misappropriation.

"A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.

\* \* \*

"A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs."

Maryland Rules of Professional Conduct, Preamble.

Through his actions, Gore has demonstrated himself unfit to continue to be authorized to practice law in this State. Gore placed himself and his business above the law. His willful refusal to file returns or pay sales taxes amounts to intentional misappropriation of funds belonging to the District of Columbia. These actions call into question his honesty and his ability to be entrusted with client or third-party funds. Gore compounded his misconduct by writing a series of checks drawn on an account that he knew or should have known had insufficient funds to cover the amount debited. We hold that, under the circumstances, the proper sanction is disbarment.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JAMES GRAFTON GORE, JR.*