**Gen. 61]**                                                                   **61**

## PUBLIC SAFETY

**POLICE OFFICERS – POLICE ACCOUNTABILITY AND DISCIPLINE – WHETHER A COMPLAINT OF POLICE MISCONDUCT INVOLVING A MEMBER OF THE PUBLIC MUST STILL BE INVESTIGATED IF THE COMPLAINT IS WITHDRAWN**

May 10, 2024

*The Honorable J. Travis Breeding*
*President, County Commissioners of Caroline County*

You have asked whether a complaint of police misconduct involving a member of the public may be withdrawn after it is filed with a law enforcement agency pursuant to § 3-102 or § 3-103 of the Public Safety Article. We conclude that, while a complainant may seek to withdraw such a complaint, the withdrawal does not alter the obligations that the Public Safety Article and its implementing regulations place upon the law enforcement agency to investigate the complaint and forward it to the appropriate civilian charging committee, called an Administrative Charging Committee ("ACC"), for a charging determination.

The relevant implementing regulations, adopted by the Maryland Police Training and Standards Commission (the "Commission"), divide complaints of misconduct involving a member of the public into two broad categories: those that are not eligible for mediation, and those that are (due to their minor and nonviolent nature). As for the first category, the plain language of the regulations, their purpose, and the purpose of the underlying statute all lead us to the conclusion that a law enforcement agency is prohibited from treating a complaint as resolved when the complainant seeks to withdraw it. As for the second category, the answer is less clear because the plain language and purpose of the regulations are not necessarily inconsistent with the concept of resolution by withdrawal in mediation-eligible cases. Still, the overall framework of procedures that the Commission has adopted for complaints of police misconduct does not currently permit a mediation-eligible complaint to be resolved via withdrawal. To authorize that result, the Commission would need to amend its regulations. Thus, as the law currently stands, the desire of a complainant to withdraw does not, for any category of complaint of police misconduct involving a member of the public, relieve the law enforcement agency of its obligation to investigate the complaint and forward it to the ACC for a charging determination.

# I
# Background

In the Maryland Police Accountability Act of 2021, the General Assembly repealed the Law Enforcement Officers' Bill of Rights, which governed disciplinary proceedings for police officers, and replaced it with a new administrative system that subjects police discipline to substantial civilian oversight. 2021 Md. Laws, ch. 59; *see* Revised Fiscal & Policy Note, H.B. 670, 2021 Leg., Reg. Sess. at 4-6, 21-25. That system is codified at Title 3, Subtitle 1 of the Public Safety Article. Among its other features, the statutory scheme assigns responsibility for determining whether to charge an officer with misconduct involving a member of the public to a new type of civilian committee called an Administrative Charging Committee. Md. Code Ann., Pub. Safety ("PS") § 3-104. Each county must establish an ACC to serve its law enforcement agencies, and there is also a statewide ACC for State and bi-county law enforcement agencies. PS § 3-104(a), (b); COMAR 12.04.09.04. Each ACC consists of five members, all civilians. PS §§ 3-104(a)(2), (b)(2), 3-102(b)(1)(ii).

Under the statutory scheme, the disciplinary process begins when an individual files a complaint of misconduct against a police officer. The complaint may be filed directly with the law enforcement agency that employs the officer or with a Police Accountability Board ("PAB"), which must forward the complaint to the law enforcement agency. PS §§ 3-103(a), 3-102(d).[1] Although the PAB is only required to accept complaints from members of the public, PS § 3-102(a)(3), any individual—whether a member of the public or a person within the law enforcement agency—may file a complaint with the law enforcement agency. PS §§ 3-103(a), 3-104(d). The statutory charging process applies so long as the alleged misconduct involves a member of the public, regardless of whether a member of the public files it. PS § 3-104(d).

After a complaint is filed, the statute provides that the law enforcement agency must, upon completing an investigation, forward the investigatory files to the appropriate ACC. PS § 3-104(d). The ACC must then decide whether to charge the

---

[1] The PAB is an oversight board for policy matters related to police discipline. Each county must have one, and active police officers may not serve on it. PS § 3-102. Among its other responsibilities, the PAB appoints some ACC members and makes recommendations to the county government "on changes to policy that would improve police accountability." *Id.*

officer with misconduct and, if so, what level of discipline to recommend. PS § 3-104(e). When making these determinations, the ACC may require the law enforcement agency to investigate the matter further. PS § 3-104(f). If the officer is charged, the chief of the law enforcement agency offers the police officer a level of discipline that must be at least as severe as the ACC recommendation. PS § 3-105(c). If the officer accepts the offer of discipline, the matter concludes; otherwise, it goes to a trial board for adjudication. *Id.*

The Commission has adopted regulations to implement this portion of the statute. COMAR tit. 12, subtit. 4, ch. 9; *see* PS § 3-114 (requiring the Commission to adopt implementing regulations). These regulations provide that a "law enforcement agency shall complete a thorough investigation upon receipt of a complaint of alleged police officer misconduct," unless the complaint is eligible for mediation. COMAR 12.04.09.06B. After completing this investigation, the agency forwards the matter to the ACC if it involves a member of the public. COMAR 12.04.09.06C; *see* PS § 3-104(d). The head of the agency may offer the ACC an opinion about whether discipline is warranted. COMAR 12.04.09.06D(2)(a).

The regulations also detail how the ACC charging process fits together with the Commission's mediation program. On this point, the regulations take up an issue that the 2021 legislation left unaddressed. In 2016, the General Assembly required the Commission to create a mediation program for complaints of nonviolent misconduct. 2016 Md. Laws, ch. 519; *see* PS § 3-207(d) (requiring the Commission to establish a mediation program "to which a law enforcement agency may refer a nonviolent complaint made against a police officer out of the standard complaint process" and to create eligibility criteria for the program by regulation). The 2021 legislation, however, did not speak to the role of the mediation program in the new system for police discipline, perhaps because the Commission had yet to set up the program. *See* 50:5 Md. Reg. 182 (Mar. 20, 2023) (establishing the mediation program).

The Commission adopted regulations to set up the mediation program in March 2023, *id.*, two months after it adopted the final regulations to implement the standard ACC charging process, *see* COMAR 12.04.09.9999 (administrative history of Chapter 9 reflecting its adoption on January 9, 2023). Together, the two sets of regulations clarify the intersection between the mediation program and the standard charging process. *See id.*; COMAR tit.

12, subtit. 4, ch. 11; COMAR 12.04.09.06. They provide that a complaint of misconduct filed by a member of the public is eligible for mediation if no use of force is alleged and if the allegations fall within the two lowest categories of misconduct on the six-category scale contained in the Commission's statewide disciplinary matrix. COMAR 12.04.11.06A, B(1).[2] If a complaint is eligible for mediation, at the outset it is not covered by the investigation requirement that the regulations impose on the agency. COMAR 12.04.09.06B (requiring an investigation of a complaint "which is not eligible for mediation"). Instead, the regulations set up a different process for mediation-eligible complaints. *See* COMAR 12.04.09.06A(1) (providing that such complaints "may, subject to the agreement of the complainant, be handled outside of the formal PAB and ACC complaint process").

As a threshold matter, to refer complaints to mediation, a law enforcement agency must first establish its own mediation program by entering into a memorandum of understanding with an approved mediation provider, developing program guidelines, and forwarding the guidelines to the Commission for review. COMAR 12.04.11.04.[3] For an agency that has complied with these threshold requirements, its first step when receiving a complaint that is eligible for mediation under the Commission's regulations is to decide whether mediation is appropriate. COMAR 12.04.11.06A(2). Even if the complaint is eligible, the agency may opt against mediation and handle the matter instead through the standard ACC charging process. *See* 12.04.11.06A(3), C.[4] Next,

---

[2] The two eligible categories are Category A, which covers "[c]onduct that has or may have a minimal negative impact on operations or professional image of the law enforcement agency," and Category B, covering "[c]onduct that has or may have a negative impact on the operations or professional image of law enforcement agency; or that negatively impacts relationships with other officers, agencies, or the public." COMAR 12.04.11.06A, 12.04.10.04D(2), (3).

[3] We understand that, thus far, only a few law enforcement agencies have complied with the threshold requirements for setting up mediation programs. Although the regulations do not spell out this point, we interpret them to mean that an agency that has not set up a mediation program must handle complaints that would otherwise be eligible for mediation (i.e., Category A and B complaints not involving use of force) through the standard ACC charging process. See COMAR 12.04.11.08B (providing that a complaint that is not successfully resolved through mediation must be referred back to the standard ACC process).

[4] Again, even though the regulations do not spell out this point, we interpret them to mean that if an agency opts against mediation, it must

if the law enforcement agency decides that mediation is appropriate, it asks the complainant and the police officer if they wish to participate. If either party declines, the matter goes back to the standard ACC charging process. COMAR 12.04.11.07B, C. Finally, where the parties agree to mediation, the agency refers the matter to its approved mediation provider. COMAR 12.04.11.07D. If the mediation results in an impasse, the agency must refer the matter back to the standard ACC charging process. COMAR 12.04.11.08B. If the mediation produces a satisfactory resolution, the agency reports that result to the PAB but does not forward the matter to the ACC for any type of determination or approval. COMAR 12.04.09.06A(2), COMAR 12.04.11.08E.

In summary, the provisions on police discipline in the Public Safety Article, as implemented by the Commission's regulations, require law enforcement agencies to (1) investigate a complaint of police misconduct involving a member of the public and (2) forward the results of the investigation to the ACC for a charging determination. This is the standard charging process. However, if an agency has set up a mediation program with an approved provider, the agency may, in its discretion and with the consent of the parties, divert an eligible complaint of minor misconduct to mediation instead of investigating it and forwarding it to the ACC. The agency must refer the complaint back to the standard charging process unless mediation produces a successful resolution.

**II**
**Analysis**

Because the regulations distinguish mediation-eligible complaints from other complaints of misconduct involving a member of the public, we address your question in two parts. First, we consider whether the withdrawal of a complaint that is not eligible for mediation alters the agency's obligation to investigate the complaint and forward it to the ACC. Second, we consider what actions the agency must take when a complainant seeks to withdraw a mediation-eligible complaint.

### A.    *Complaints Not Eligible for Mediation*

In our opinion, if a complainant seeks to withdraw a complaint of misconduct that is not eligible for mediation under the Commission regulations, the agency must nonetheless investigate

---

refer the complaint back to the standard charging process. *See* COMAR 12.04.11.08B; *supra* note 3.

the complaint and forward it to the ACC for a charging determination. The Commission's regulations expressly state that the law enforcement agency "shall complete a thorough investigation upon receipt of a complaint of alleged police officer misconduct," provided that the complaint is not eligible for mediation. COMAR 12.04.09.06B. It is true that the statutory provisions, standing alone, do not impose an investigation requirement as clearly as this regulation does. The statutory provisions do strongly imply that the law enforcement agency must investigate all complaints involving members of the public, *see* PS § 3-104(d) ("On completion of an investigation of a complaint of police misconduct involving a member of the public and a police officer . . . the law enforcement agency shall forward to the appropriate administrative charging committee the investigatory files for the matter."), PS § 3-104(f)(1) (noting that the ACC may request information from the agency that "conducted the investigation" and may "requir[e] additional investigation"), and they expressly require the law enforcement agency to "immediately review" complaints that are *filed by* a member of the public, PS § 3-113(a). But, unlike the regulations, the statute does not *expressly* require the law enforcement agency to investigate all misconduct complaints that *involve* a member of the public and that must, for that reason, go to the ACC for charging determinations. Nonetheless, even assuming that the statute itself would not compel the same result as the regulation, the General Assembly has delegated broad authority to the Commission to adopt implementing regulations for the police discipline process. *See* PS § 3-114. As such, the regulation requiring the law enforcement agency to investigate all complaints that are not eligible for mediation is valid and must be followed given that it does "not contradict the statutory language or purpose." *Lussier v. Maryland Racing Comm'n*, 343 Md. 681, 688 (1996).

We do not think that a complainant's desire to withdraw a complaint alters the clear investigation requirement that this regulation imposes. The Supreme Court of Maryland confronted a similar issue in the context of attorney discipline. A Maryland Rule required Bar Counsel to "make an appropriate investigation of every complaint [of attorney misconduct] that is not facially frivolous or unfounded." *Attorney Grievance Comm'n v. Lee*, 393 Md. 546, 561 (2006) (quoting former Md. Rule 16-731(b)). The Court interpreted the plain language of this rule to mean that Bar Counsel "should not dismiss [a] complaint merely upon the Complainant's subsequent request to withdraw, unless [Bar Counsel] found the substantive complaint to be frivolous or

unfounded." *Id*. at 562. The Court further reasoned that the purpose of the investigation requirement supported this conclusion:

> Indeed, if the Rule were construed otherwise, it would allow an attorney under investigation to avoid disciplinary actions by offering the complainant incentives to withdraw the complaint. Even though an individual complainant may believe that he or she was recompensed adequately as a result of the attorney's post-complaint gestures, allowing an attorney to avoid a pending investigation and potential disciplinary actions in such a manner would be contrary and detrimental to the purpose of the Maryland Rules of Professional Conduct "to protect the public and the public's confidence in the legal profession."

*Id*. (footnote omitted) (quoting *Attorney Grievance Comm'n v. Gore*, 380 Md. 455, 471 (2004)). If the withdrawal of a complaint nullified the investigation requirement, in other words, the subject of the investigation would be incentivized to take up the matter directly with the complainant, leaving the public's interest in ensuring adequate enforcement of the underlying conduct rules unaddressed. *See id*.

Although the context here is different, we think similar reasoning applies. Not only does the plain language of the Commission regulation require the law enforcement agency to investigate every complaint that is not eligible for mediation, it states that the agency's *receipt* of the complaint triggers this obligation. COMAR 12.04.09.06B. This language indicates that withdrawal does not change the investigation requirement, as the language ties the requirement to the information that the agency learns rather than to the wishes of the complainant. *See id*.; *Attorney Grievance Comm'n v. Ruddy*, 411 Md. 30, 68 (2009) (reiterating the holding of *Lee* and reasoning that "a complaint is simply the mechanism by which Bar Counsel becomes aware of possibly questionable attorney conduct").

Further, this interpretation advances the purpose of the regulation and its authorizing statute. In creating new procedures for matters of police discipline where an allegation of misconduct involves a member of the public, the General Assembly sought to entrust charging determinations to a civilian committee—the ACC.

*See* PS § 3-104(d); Revised Fiscal & Policy Note, H.B. 670, 2021 Leg., Reg. Sess. at 5 (explaining the framework of the ACC process). It would undermine this legislative purpose to allow the law enforcement agency to terminate the investigation and charging process, without giving the ACC the opportunity to consider the matter, simply because the complainant decides to withdraw. Although withdrawal may indicate in some cases that the matter does not warrant discipline, in others withdrawal may occur even though the allegation of misconduct is well-founded and even where the public has an interest in addressing the matter. *See Lee*, 393 Md. at 562. We think that, under the statutory scheme, it naturally rests with the ACC rather than the law enforcement agency to parse these considerations. *See* PS § 3-104(d), (e). In addition, interpreting the regulation to mean that withdrawal does not cut off the investigation and charging process avoids creating an incentive for the police officer to prevail upon the complainant to withdraw. *See Lee*, 393 Md. at 562.

Although we have not found any discussion of withdrawn complaints in the history of the legislation creating the ACC charging process, we think that the legislative history, in a broader sense, supports our reading of the regulation. As originally enacted in 2021, the ACC charging process applied to any "complaint made by a member of the public against a police officer." 2021 Md. Laws, ch. 59 (codified at PS § 3-104(d)). The process did not govern internal complaints. *Id*. The next year, the General Assembly revised this provision to its current form, so that the charging process now covers any complaint "*involving* a member of the public . . . regardless of whether the complaint originated from within the law enforcement agency or from an external source." 2022 Md. Laws, ch. 141 (amending PS § 3-104(d)). The process therefore governs internal complaints so long as they allege misconduct towards the public. PS § 3-104(d). This change shows that the General Assembly was concerned not with the source of a misconduct allegation, but instead with ensuring that the ACC would assess all allegations of misconduct so long as they involve actions toward the public. *See* Revised Fiscal & Policy Note, S.B. 389, 2022 Leg., Reg. Sess. at 1 (explaining that the change, ultimately enacted as part of S.B. 763, aimed to require "all complaints of police misconduct involving a member of the public to be forwarded to the appropriate [ACC]" (emphasis omitted)). The General Assembly has made plain, in other words, that it is the nature of the alleged misconduct that matters, not the source. We think this point tends to suggest that a decision by the source—the complainant—to withdraw does not alter the applicability of the ACC charging process. *See Ruddy*, 411 Md. at 68.

We recognize that, in some cases, the withdrawal of a complaint will suggest that it was unfounded or will leave the law enforcement agency with limited avenues of investigation, especially where the complainant chooses not to participate in the process.[5] Law enforcement agencies might reasonably question whether they should be required to allocate resources to the investigation of such complaints. We think, however, that the regulations accommodate this concern. First, although the regulations require a "thorough investigation," they do not require a wasteful or useless one. *See* COMAR 12.04.09.06B. The agency may still calibrate the investigation to the circumstances. Where an agency believes that it would not be productive to carry the investigation of a withdrawn complaint beyond a certain point— say, after interviewing the officer involved—the regulations do not bar the agency from forwarding the matter to the ACC at that juncture. The ACC may always request additional investigation if it disagrees with the agency's approach. COMAR 12.04.09.07A(2). The regulations even allow the agency chief to influence the ensuing process by opining to the ACC that the matter does not warrant discipline. COMAR 12.04.09.06D. In other words, investigations and charging determinations for withdrawn complaints may sometimes be more streamlined than for other complaints. The essential requirement is only that the decision to dispose of a withdrawn complaint without discipline must rest with the ACC, not the agency.

## B. *Complaints Eligible for Mediation*

The answer is less clear as to complaints that are eligible for mediation. The regulation discussed above that expressly requires other complaints to be investigated upon receipt does not, by its plain terms, apply to mediation-eligible complaints. COMAR 12.04.09.06B (providing that "[a] law enforcement agency shall complete a thorough investigation upon receipt of a complaint of alleged police officer misconduct, *which is not eligible for mediation*" (emphasis added)). We thus consider whether a law

---

[5] The agency does not have any authority to require the complainant to participate in an investigation. The ACC, unlike the agency, has subpoena power and could presumably subpoena a complainant, although we imagine that it would reserve this power for matters where there is a significant public interest in obtaining the complainant's evidence. *See* PS § 3-104(f). And the ACC, unlike the agency, also has authority to dispose of a withdrawn complaint by determining that no discipline is warranted. *See* PS § 3-104(e)(2). The point, once again, is that the statute assigns these essential decisions to the ACC—not the law enforcement agency.

enforcement agency must investigate a complaint that is eligible for mediation when the complainant purports to withdraw the complaint.

We note, at the outset, that this issue about the withdrawal of mediation-eligible complaints is largely academic at this point. The Commission promulgated its mediation regulations only recently, in March 2023. *See supra* Part I. The Commission informs us that, thus far, only a few of Maryland's law enforcement agencies have set up mediation programs. Under the regulations, as explained earlier, an agency that does not have a mediation program must address all complaints involving a member of the public—even those that allege minor and nonviolent misconduct— through the standard ACC charging process, which begins with an investigation by the agency. *See supra* note 3.

In any event, we discuss the mediation issue briefly to provide guidance to the Commission and the agencies. As noted above, the plain language of the regulation that we have found controlling for other complaints does not control this issue because it does not directly apply the investigation requirement to mediation-eligible complaints. COMAR 12.04.09.06B. And in a general sense, the proposition that an agency should have discretion to consider a mediation-eligible complaint resolved if it is withdrawn could comport with the purpose of the regulatory scheme and its underlying statute. Mediation seeks to work through the stated concerns of the complainant. *See* COMAR 12.04.11.03B(6), 12.04.10.03B(8) (defining "mediation" to mean "a process in which parties in a dispute work with one or more impartial mediators who assist the parties in reaching a voluntary agreement for the resolution of a nonviolent dispute or conflict"). By granting the agency discretion to steer an eligible complaint to mediation instead of investigating it, the regulations empower the agency to treat the private concerns of the complainant as paramount where the alleged misconduct is minor and nonviolent. *See* COMAR 12.04.11.06A(2). This grant of discretion stands in contrast to the charging process for complaints that are not eligible for mediation, where the public interest in addressing the allegation of misconduct prevails over the complainant's private concerns. *See Lee*, 393 Md. at 562; *supra* Part II.A.

As such, there is an argument that allowing the agency to treat a mediation-eligible matter as resolved if the complainant withdraws would not conflict with the purpose of the mediation regulations or the underlying statute. Nor do we think that granting the agency this discretion would create a substantial incentive for

the police officer to pressure the complainant to withdraw, because the mediation option allows the officer to pursue similar ends (informal resolution of the complainant's concerns) through legitimate means. *See* COMAR 12.04.10.03B(8). The fact that only minor complaints are eligible for mediation further reduces the risk of improper pressure. *See* COMAR 12.04.11.06A, B(1).

Nonetheless, the Commission's existing regulations cannot, in our view, be interpreted to grant a law enforcement agency this discretion. Under the regulations, withdrawal is not a method by which any type of complaint, including a mediation-eligible complaint, may be resolved. Instead, the regulations identify only one way in which a complaint of misconduct involving a member of the public may be resolved outside of the ACC charging process: through a *successful* mediation. *See* COMAR 12.04.11.08. And the regulations attach careful protocols to this form of resolution: The agency must track and report each such resolution to the PAB. COMAR 12.04.09.06A(2), 12.04.11.08E. Also, the mediator must document a successful resolution in a written statement that memorializes the parties' understanding. COMAR 12.04.11.08C. Both the complainant and the officer must sign this statement. *Id*. In this way, the regulations safeguard against any misunderstanding about whether either party wishes to send the matter through the ACC process or any other misconstruction of their positions. *See id*.

In our opinion, the fact that the regulations attach such protocols to the only form of alternative resolution that they recognize means that they cannot be interpreted to allow an agency to treat a mediation-eligible complaint as resolved if it is withdrawn. *See Kor-Ko Ltd. v. Maryland Dep't of the Env't*, 451 Md. 401, 417 (2017) (reasoning that a regulation must be read "within the context of the [regulatory] scheme to which it belongs, considering the purpose, aim, or policy of the [agency] in enacting the [regulation]" (alterations in original) (quoting *Lockshin v. Semsker*, 412 Md. 257, 276 (2010))). If the Commission had intended to allow an agency to consider the matter resolved when the complainant withdraws a meditation-eligible complaint, we think the regulations would more specifically address that situation.

Thus, in our view, if the Commission wishes to authorize resolution by withdrawal for mediation-eligible complaints, it would need to do so by regulation. To be clear, this choice rests with the Commission; the statute does not require it to grant agencies this authority. *See supra* Part I (explaining that the statute does not address the intersection between the mediation program

and the ACC charging process). As we read the existing regulations, unless the complainant and the officer sign a resolution statement and the mediator reports that result in writing to the agency, the agency must send the complaint through the standard investigation and charging process—even if withdrawal cuts off the mediation process. *See* COMAR 12.04.11.08. Although the regulations do not expressly impose this requirement on law enforcement agencies when a mediation-eligible complaint is withdrawn, they imply it by providing a mechanism for a mediation-eligible complaint to avoid the ACC charging process altogether only where a mediator documents that the complaint has been successfully resolved. *See id.* Where mediation does not deliver this result, the ACC charging process provides the only avenue for handling a mediation-eligible complaint. *See* COMAR 12.04.09.06A, B.

### III
### Conclusion

We conclude that, under the Public Safety Article and its implementing regulations, a law enforcement agency must investigate a complaint of police misconduct involving a member of the public and forward the matter to the appropriate ACC, even if the complainant seeks to withdraw the complaint. Although the Commission might conceivably establish a different rule by regulation for those complaints that are eligible for mediation, it has not done so. Under current law, withdrawal does not alter the obligations of a law enforcement agency to investigate and forward any type of misconduct complaint involving a member of the public.

Anthony G. Brown
Attorney General of Maryland

Ben Harrington
Assistant Attorney General

Patrick B. Hughes
Chief Counsel, Opinions and Advice